UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAISY A. PERDOMO | * | CIVIL ACTION |
| | * | |
| Plaintiff, | * | NO. 11-2374 |
| | * | |
| VERSUS | * | SECTION "A" (1) |
| | * | |
| THE UNITED STATES OF AMERICA | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE**

**NOW INTO COURT**, through the undersigned Assistant U.S. Attorney, comes the United States of America, who files this memorandum in opposition to Plaintiff's motion to strike Defendant's expert witness, Dr. Everett Robert. *See* Rec. Doc. 16.

## I.  FACTS

As correctly noted by Plaintiff, this Court's initial scheduling order set a deadline of April 30, 2012 for Defendant to produce any expert reports. *See* Rec. Doc. 8. Realizing it needed a little more time, the undersigned asked Plaintiff's counsel to consent to a 3-week extension of Defendant's expert report deadline, which Plaintiff consented to and the Court granted. *See* Rec. Doc. 13. Accordingly, Defendant's expert report deadline was Monday, May 21, 2012. Unfortunately, due to the circumstances discussed herein, Defendant did not produce its expert report to Plaintiff until Tuesday, May 22, 2012 at 11:38 a.m. *See* Rec. Doc. 16-4.

## II.  ARGUMENT

Plaintiff moves to strike Defendant's expert witness pursuant to Federal Rule of Civil Procedure 37(c)(1). Rule 37(c)(1) states that "[i]f a party fails to provide information … as required by Rule 26(a) … the party is not allowed to use that information or witness … at a trial,

1

*unless the failure was substantially justified or is harmless.*" (emphasis added). In this case, producing the expert report before noon on the day following the deadline was both harmless and substantially justified.

**A.  Harmless**

It is the rare circumstance where producing an expert report 11 hours and 38 minutes after the expert report deadline would be harmful to a legal opponent. In support of her motion to strike, Plaintiff did not suggest in any way that she was harmed by the tardy production of the expert report. *See* Rec. Doc. 16-1. Defendant will obviously make its expert witness available for deposition, should Plaintiff desire to depose Dr. Robert. It is impossible to imagine what harm Plaintiff might allege where the expert report was produced so close to the deadline. This obviously does not excuse Defendant's tardy production of the report. However, because the late production of the expert report was harmless and because the undersigned has reasonable justifications, described below, for the tardy production of the report, this Court should not impose any sanctions under Rule 37 and should allow Dr. Robert to testify as a witness.

**B.  Substantially Justified**

Perhaps more important than the fact that Plaintiff was not harmed by the late production of Dr. Robert's report is that the undersigned was substantially justified in missing the deadline.

Plaintiff was deposed on May 8, 2012 and Dr. Robert performed an independent medical examination (IME) of Plaintiff on May 9, 2012. During Plaintiff's deposition, she testified that she was involved in a second automobile accident (not with the USPS) on January 20, 2012 and that her back pain increased after this second accident. The undersigned received a rough draft of Dr. Robert's expert report on May 15, 2012 and it was apparent from reviewing Dr. Robert's report that Plaintiff did not mention her January 20, 2012 accident to Dr. Robert. Because the

January 20, 2012 accident fell within Plaintiff's most recent medical treatment (consisting of lumbar and thoracic steroid injections), the undersigned believed Plaintiff's testimony about this accident could be important to Dr. Robert formulating his expert opinions. Therefore, on May 16, 2012, the undersigned emailed Dr. Robert's staff excerpts from Plaintiff's deposition transcript and asked for Dr. Robert's opinion regarding the January 20, 2012 accident.[1]

This email was sent five days before the expert report deadline and typically, Dr. Robert would have been able to inform the undersigned that his opinion was unchanged, edit his previous report, or draft an addendum before the May 21, 2012 report deadline. Unfortunately, the undersigned was sick throughout this timeframe, making it very difficult to communicate with Dr. Robert's office.

The undersigned was home with a sick child the afternoon of May 8th (after Plaintiff's deposition) and May 9th. The undersigned was then home sick on 10th and 11th. The undersigned was feeling mostly better and back at work on May 14th and 15th, but began feeling sick again the evening of May 15th. Nonetheless, the undersigned went to work sick with fever and cough on May 16th and 17th because of pressing work needs (including a settlement conference in another case and motion deadlines in other cases). The undersigned was then home sick again on May 18th, and in fact went to the doctor for a chest x-ray over concerns that he had bronchitis or pneumonia.

Clearly the undersigned was not functioning at 100% during the weeks leading up to the expert report deadline and this affected the undersigned's ability to communicate with Dr. Robert's office. Missing work on May 18th turned out to be of critical importance, because Dr.

---

[1] *See* Exhibit 1, 5/16/12 email from AUSA Jason Bigelow to Penny Cantrelle.

Robert's office called the undersigned twice that day with questions regarding the expert report.[2] The undersigned was missed these calls and was not able to respond to these questions until the morning of May 21st, the expert report deadline.[3] The undersigned then spoke to Dr. Robert directly regarding his expert report around noon on May 21st.

Despite the missed time at work and resulting difficulty communicating with Dr. Robert's office, the undersigned left work early[4] on May 21st believing the signed expert report would be produced before the close of business.[5] After talking to Dr. Robert's office and the undersigned's legal assistant, Dr. Robert's office agreed to fax the signed report to the undersigned's legal assistant, who was supposed to fax the report on to Plaintiff's counsel, Pedro Galeas.[6] Unfortunately, "Penny" in Dr. Robert's office left early and did not give "Renee" in Dr. Robert's office the message that the report needed to be faxed before close of business.[7] Therefore, despite the best efforts of the undersigned, the signed report was not received until the morning of May 22, 2012, after the expert witness report deadline had passed. As noted earlier, the report was quickly forwarded to Plaintiff's counsel, who received it less than twelve hours after the expiration of the deadline.[8]

---

[2] *See* Exhibit 2, 5/21/12 email from AUSA Jason Bigelow to Penny Cantrelle.
[3] *See* Exhibit 2.
[4] The undersigned left work at 3:30 on 5/21/12 to take his daughter to a dance recital rehearsal. The undersigned no longer had a fever at this time, though he still had an almost uncontrolled cough.
[5] *See* Exhibit 3, 5/21/12 email from Penny Cantrelle to AUSA Jason Bigelow.
[6] *See* Exhibit 3.
[7] *See* Exhibit 3.
[8] It should be noted that the undersigned explained the circumstances surrounding the late production of Dr. Robert's report to Plaintiff's counsel, Pedro Galeas, though not until after Mr. Galeas filed his motion to strike Dr. Robert. The undersigned asked Mr. Galeas to extend the undersigned the olive branch of professionalism and excuse the late production, given the undersigned's recent persistent illness. The undersigned also informed Mr. Galeas that there might be grounds to strike Plaintiff's treating expert witnesses, and offered to resolve these

### III. CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny Plaintiff's motion to strike Dr. Robert as an expert witness. The slightly late production of Dr. Robert's expert report was both "harmless" and "substantially justified" under Federal Rule of Civil Procedure 37(c)(1).

>
> Respectfully submitted,
>
> JIM LETTEN
> UNITED STATES ATTORNEY
>
>
> /S/ JASON M. BIGELOW
> JASON M. BIGELOW (29761)
> Assistant United States Attorney
> 650 Poydras Street, 16th Floor
> New Orleans, Louisiana 70130
> Telephone: (504) 680-3025
> Fax: (504) 680-3174
> Email: jason.bigelow@usdoj.gov

OF COUNSEL:

Kathleen M. Arndt, Attorney
United States Postal Service Law Department
General Law Service Center – National Tort Center
1720 Market Street, Room 2400
St. Louis, Missouri 63155-9948
Telephone: (314) 345-5868
Fax: (314) 345-5893
Kathleen.m.arndt@usps.gov

---

issues out-of-court. *See* Exhibit 4, 5/24/12 email from AUSA Jason Bigelow to Pedro Galeas. Mr. Galeas rejected this request.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been served upon counsel for all parties by ECF, facsimile, or mailing the same to each, properly addressed and postage prepaid this 31st day of May, 2012.

/S/ JASON M. BIGELOW_____
JASON M. BIGELOW
Assistant United States Attorney