UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


DAISY A. PERDOMO                                    CIVIL ACTION

VERSUS                                              NO. 11-2374

UNITED STATES OF AMERICA                            SECTION "A"(2)


## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came on for trial before the Court, sitting
without a jury, on July 30, 2012.  Following the close of all
evidence, the Court took the matter under advisement and
instructed counsel to submit their post-trial memoranda within ten
days (Rec. Doc. 47).

Having now considered the pleadings, evidence offered at
trial, arguments of counsel, and applicable law, the Court renders
its Finding of Fact and Conclusions of Law pursuant to Federal
Rule of Civil Procedure 52(a).  To the extent certain findings of
fact are more appropriately classified as conclusions of law, they
should be so construed.  To the extent certain conclusions of law
are more appropriately classified as findings of fact, they should
be so construed.

## FINDINGS OF FACT

This is an action under the Federal Tort Claims Act, 28
U.S.C. §§ 2671, et seq., ("FTCA") resulting from a collision

between a United States Postal Service ("USPS") truck, then being driven by USPS employee Shawn Manning, and a Ford Expedition driven by plaintiff Daisy Perdomo. At all times pertinent herein, Manning was acting within the course and scope of his federal employment with USPS.

On April 20, 2010, Perdomo was heading west on West Esplanade Avenue in Metairie, Louisiana. Manning attempted to cross West Esplanade at Lake Villa Avenue. Manning had a stop sign and Perdomo had the right of way. Manning collided with Perdomo. Prior to trial the Court granted Perdomo's motion for partial summary judgment, finding that Manning was 100 percent at fault for the accident. (Rec. Doc. 33). The sole issue remaining for trial was the question of damages attributable to the USPS accident.

On January 20, 2012, during the course of this litigation, Perdomo was involved in a second automobile accident. The tortfeasor's insurer surrendered its policy limit of $15,000.00, and Perdomo's UM carrier surrendered its policy limit of $15,000.00.

Perdomo had no pre-existing back or neck injuries at the time of the USPS accident. Perdomo began to experience neck and back pain almost immediately after the accident. Perdomo began to see Dr. William Dennington, a chiropractor, three days after the accident. Dennington's records indicate that Perdomo weighed 230

pounds (ht. 5'2") on April 23, 2010, which was three days after the accident. (Exh. 3). Dennington pursued a conservative physical therapy plan but referred Perdomo to Dr. Ciro Cerrato, a general practitioner, due to continued complaints of low back pain. Perdomo treated with Dennington for the last time on November 23, 2010, at which time he simply told her to return if necessary. Dennington believed that much of Perdomo's back problem had resolved but not completely, which is why he told her to return for additional treatment should the need arise.

Perdomo visited Dr. Cerrato once on September 16, 2010, which was about five months after the USPS accident. Dr Cerrato concluded that the back and neck complaints that Perdomo complained of at that time were attributable to the USPS accident. Cerrato gave Perdomo a prescription for anti-inflammatory medication.

Perdomo did make progress while under Dennington's care but Perdomo testified that she continued to experience back and to a lesser extent neck pain when she left his care and began to treat regularly with Dr. Michael Haydel, another chiropractor. The Court found Perdomo's testimony regarding her complaints of continuing pain to be credible and Dennington's testimony was not inconsistent with this finding. The Government's suggestion that Perdomo's back issues had resolved by the time she stopped treating with Dennington is not persuasive and is contradicted by

the medical records that post-date Perdomo's treatment with Dennington.

Perdomo began treating with Haydel in November 2010. (Exh. 4). Perdomo ultimately underwent several MRIs at Haydel's behest, consulted with a neurosurgeon (Dr. Bradley J. Bartholomew), and consulted with a pain specialist (Causeway Interventional Medicine--Dr. Robert D. Lesser), again at Haydel's recommendation and in light of Perdomo's continued complaints of unresolved pain.

The MRIs unequivocally confirmed disc abnormalities in the lower spine that would account for Perdomo's continued pain. Each treating physician who reviewed the MRI concurred with the radiologist's conclusion as to the disc abnormalities. (Exh. 14 (Greenberg); Exh. 18 (Bartholomew); Exh. 19(Lesser)).

Dr. Bartholomew explained why surgery was not a practical option for Perdomo's disc issues. Bartholomew was of the opinion that someone of Plaintiff's age would not typically be prone to disc herniation although he did admit that Plaintiff's weight could possibly be a contributor. Perdomo was 19 years old at the time of the accident and 22 years old on the date of trial.

The medical records establish that just prior to the second accident, on January 3, 2012, Perdomo was still undergoing treatment with Dr. Lesser for pain in the aftermath of the USPS accident. (Exh. 21). On that date she received an epidural steroid injection and reported immediate relief from the back

pain. (<u>Id.</u>). Lesser instructed Perdomo to return in two weeks for a follow-up appointment. (<u>Id.</u>).

The second accident occurred on January 20, 2012, approximately two weeks after the January 3rd visit with Lesser. Lesser testified that Plaintiff did seem to be doing well with her treatments just prior to the second accident but he would have liked to have had the opportunity to observe Perdomo over time--an opportunity that he did not get in light of the intervening second accident--to know just how effective the treatments had been. Lesser was of the opinion that Perdomo might have possibly been asymptomatic prior to the second accident but she was by no means cured.

The Government's expert physician, Dr. Everett Robert, conducted an IME on Plaintiff. Robert was convinced that Perdomo's disc abnormalities were strictly weight induced and that she had sustained only non-spinal, muscular injuries in the USPS accident. Robert believed from his review of the records that Plaintiff's symptoms had resolved at one point. Robert stated that 90 percent of the MRIs that he sees have disc bulges, although they are not common at Perdomo's young age.

The evidence establishes that Perdomo's ongoing back problems are attributable to disc abnormalities. The disc abnormalities were confirmed by medical tests that pre-date the second accident so the disc problems did not originate with the second accident.

However, the evidence does not establish that the USPS accident was the cause of the disc abnormalities to the exclusion of other factors such as weight. What is clear though is that the disc abnormalities, even if they pre-existed the USPS accident, were completely asymptomatic prior to that accident because Perdomo did not have back pain until the USPS collision. Thus, even if the disc abnormalities pre-dated the USPS accident, they only became symptomatic after the trauma of the USPS accident.

The evidence does not support the conclusion that the USPS accident caused permanent injury to Plaintiff such that she will endure back pain for the rest of her life because of that accident. Again, the etiology of the abnormal discs is not clear. Every doctor who was questioned about Perdomo's weight indicated that excessive weight may play a part in her ongoing back pain. Dr. Lesser's treatment notes from May of this year indicate that he talked to Perdomo about how lifestyle changes, including weight loss, might be necessary for an optimal outcome with her back problems. (Exh. 25).

The genesis of Perdomo's pain was the USPS accident and while the pain had not completely resolved prior to the second accident she was much improved after the original injury. (Exh. 26). Plaintiff continued to receive treatment for pain from the time of the USPS accident up through the time of the second accident, albeit not as regularly as in the immediate aftermath of the USPS

accident.

The second accident, which occurred 21 months after the USPS accident, aggravated or exacerbated the back injury that Perdomo sustained in the accident with Manning.  Plaintiff continued to experience pain as of the date of trial but all of that pain cannot necessarily be attributed to the USPS accident.

### CONCLUSIONS OF LAW

Under the FTCA the United States is liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment.  <u>U.S. v. Orleans</u>, 425 U.S. 807, 813 (1976); 28 U.S.C. §§ 1346(b), 2674.  The United States's liability for tort claims is according to the law of the state where the alleged tortious action occurred.  28 U.S.C. § 2674; <u>Owen v. U.S.</u>, 935 F.2d 734, 737 (5th Cir. 1991).  The alleged tortious action in this case occurred in Metairie, Louisiana so Louisiana's substantive tort law applies in this case.

Under Louisiana law, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  La. Civ. Code art. 2315.

The law is clear that where an injury occurs through the negligent act of one party and is aggravated by a separate negligent act of another party, the original negligent party is only responsible for the damages caused by his own fault.  <u>Jenkins v. Linsday</u>, 693 So. 2d 238, 240 (La. App. 4th Cir. 1997) (<u>citing</u>

<u>Rebstock v. Cheramie</u>, 673 So. 2d 618 (La. App. 1st Cir. 1996); <u>Swan v. Vernon Mill Co.</u>, 517 So. 2d 1161 (La. App. 3d Cir. 1987); <u>Livaccari v. United Jewish Appeal, Inc.</u>, 126 So. 2d 67 (La. App. 4th Cir. 1961)). The plaintiff has the burden of proving that the subsequent injuries were not the result of a separate, independent, and intervening act for which the defendant is in no way responsible. <u>Id.</u> (<u>citing</u> <u>Swan</u>, 517 So. 2d at 1163). A tortfeasor who causes a first accident is not liable when a second accident aggravates injuries arising out of the first accident when there is no causal relationship between the two accidents. <u>Id.</u> In other words, when a plaintiff is injured by two separate accidents, each tortfeasor is only liable for the damages arising from his own fault. <u>Dumas v. La. Dep't of Culture, Recreation, & Tourism</u>, 828 So. 2d 530 (La. 2002).

Under Louisiana law and principles of comparative fault, the Government is not liable for any damages that flow from the second accident because there is no causal relationship between the USPS accident and the second accident. The tortfeasor in the second accident is the party liable for any aggravation or irritation of Plaintiff's back problems, even if the back problem originally arose as a result of the first accident. Plaintiff apparently settled her claims with that tortfeasor for the available policy limits and so she has been legally compensated for the injuries arising out of the second accident. To the extent that Plaintiff

8

seeks to recover for any damages that post-date the second accident, she bears the difficult burden of proving that those damages relate to the USPS accident and not to the second accident. There is no legal presumption that the damages that Plaintiff continues to incur are causally related to the USPS accident as opposed to the second accident.

Given Plaintiff's treatment history leading up to the second accident, it is certainly plausible to believe that she might have continued to receive some additional periodic treatments for back pain associated with her disc problems. But the evidence does not establish what Plaintiff's future medical prognosis would have been had the second accident not occurred, except that she was generally improved somewhat when the second accident aggravated her back.

The sole evidence presented regarding the severity of the second accident was Plaintiff's testimony that the second accident was of little significance. Of course, this testimony was self-serving, which is not necessarily a reason to disbelieve it, but the Court did not find Plaintiff's characterization of the second action to be completely credible. The Court notes that Plaintiff's UM carrier paid her its policy limits, apparently after concluding that the $15,000 liability policy would render the tortfeasor underinsured for the accident.

Plaintiff has not established by a preponderance of the

evidence that any of her damages that post-date the second accident are causally related to the USPS accident.

Plaintiff is entitled to the following awards to compensate her for damages in conjunction with the USPS accident:  Special damages of $21,272.00;[1] general damages of $50,000.00 for approximately 21 months of pain and suffering associated with the USPS accident.

The Clerk of Court is directed to enter judgment accordingly.

August 16, 2012

_____
                JAY C. ZAINEY
        UNITED STATES DISTRICT JUDGE

---

[1] This special damage award is based on the undisputed amount of $5,590.00, plus Dr. Haydel's bills prior to the second accident ($7,007.00) and Dr. Lesser's planned treatment regardless of the second accident ($8,675.00).

10